```
              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF ARKANSAS
                       FAYETTEVILLE DIVISION
```

R.P. and M.P., Individually and
as Parents and Next Friends of K.P.
and K.P.                                                    PLAINTIFFS

    vs.                     CASE No. 06-5014

SPRINGDALE SCHOOL DISTRICT, et al.                          DEFENDANTS

## O R D E R

Now on this 21st day of February, 2007, comes on to be considered defendants' **Motion to Dismiss (Doc. 3)**, plaintiffs' **Response (Doc. 7)**, and defendants' **Reply (Doc. 8)**. Also before the Court is plaintiffs' **Motion to Substitute Party (Doc. 9)**. The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

    1.   The named plaintiffs in this action are:

    *   K.P. -- a mentally-retarded 21-year old former special-education student in the Springdale School District;  and

    *   R.P. and M.P., individually and as parents and next friends of K.P.

    2. Plaintiffs bring this action against the Springdale School District (hereinafter "the District") and against various District employees in both their individual and official capacities. Plaintiffs allege the following:

    *    that K.P. was born with complex congenital heart disease and, in January 2002, at the age of 16, he underwent a heart

transplant.  K.P. did not return to school until the 2002-2003 school year, at which time, school officials were made aware of his medical condition.  According to plaintiffs:

- During the Winter and Spring 2003, K.P. was subjected to acts of cruelty, humiliation, ridicule and assault by a group of non-disabled peers who pretended to befriend K.P.

- Because K.P. was mentally impaired, he lacked the capacity to realize the motives of his non-disabled peers who preyed on K.P.'s impaired mental capacity and committed various acts, including but not limited to, confining K.P. in a dog cage for periods of time while forcing K.P. to consume dog feces, stealing from K.P., and committing sexual abuses towards K.P., including sexually exposing K.P. to a large group of non-disabled peers.

- As K.P. lacked the mental capacity to express his feelings of outrage as a result of his peers abusive and outrageous acts, he instead expressed feelings of  anger, hopelessness, and suicide. This resulted in R.P. and M.P. seeking and obtaining counseling services for K.P.

(Doc. 1 ¶ ¶ 12-13.)

\*   that K.P.'s parents spoke with school officials about what had occurred and were assured that the officials would take measures to ensure that K.P. would be safe at school and would not be subject to further acts of abuse by his peers.  However, K.P. continued to be harassed, bullied, and humiliated by his peers.

\*   that K.P.'s therapist subsequently contacted school officials "and helped to establish a plan so that K.P. could feel safe and return to school and be free from acts of harassment and ridicule from his peers."  (Doc. 1 ¶ 17.)

2

\*   that, according to plaintiffs:

-   Despite the plan put in place by K.P.'s therapist, District Defendants were deliberately indifferent to K.P.'s needs and failed to implement a plan and protect K.P. from acts of bullying, harassment, and teasing by his peers....

-   Various meetings were held with District Defendants to discuss K.P.'s anxieties and fears concerning the harassment that was occurring at school. At the meetings held to resolve issues relating to K.P.'s anxieties in attending school, District Defendants expressed concerns and a willingness to work through those issues. Behind the scenes, however, District Defendants took no steps to address the issues which were escalating K.P.'s fears and were deliberately indifferent to K.P.'s disabilities and resulting trauma, making statement[s] to other individuals that "K.P. is crazy, his Mother is crazy and watch out for that counselor." ...

-   As a result of Defendants' repeated failures, on November 21, 2003, and September 23, 2004, the Plaintiffs lodged Due Process Complaints with the Arkansas Department of Education.

-   In both cases[,] due process hearings were scheduled to begin under the direction of the Arkansas Department of Education and on each occasion, an agreement was reached disposing of certain issues relating to a Free and Appropriate Public Education for K.P. by the District, but preserving other claims ... for purposes of exhaustion.

-   The Defendant District breached their first settlement agreement with R.P. and M.P. by failing to timely hold an IEP [Individualized Education Plan] Conference and develop an IEP with an appropriate transition plan and behavioral supports necessary which resulted in further disruption in services to K.P. during the 2004-05 school year.

(Id. ¶ ¶ 18, 20, 30-31.)

3

    \*    that, as a result of defendants' deliberate indifference to K.P.'s emotional condition and supportive needs, K.P. was traumatized to such a degree that he ultimately could no longer attend school.

    3.    Plaintiffs assert claims under the following federal statutes:

    \*  42 U.S.C. § 1983;

    \*  § 504 of the Rehabilitation Act, 29 U.S.C. § § 701-796;

    \*  the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § § 1400-1487;

    \*  the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, <u>et. seq.</u>; and

    \*  the Equal Education Opportunity Act, 20 U.S.C. § 1701, <u>et. seq.</u>

    Plaintiffs also assert state law claims of outrage, negligence, and breach of contract.

    4. Defendants move to dismiss plaintiffs' complaint on various grounds which the Court will take up and discuss in turn.

    5.    <u>Standard of Review</u> -- It is first necessary to establish the proper standard of review when considering a motion to dismiss. Plaintiffs assert that the motion to dismiss should be construed as a motion for summary judgment, as defendants submitted the parties' two aforementioned settlement agreements as attachments to the motion to dismiss.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court generally must ignore materials outside the pleadings, but it may consider materials that do not contradict the complaint. See Porous Media Corp. V. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). The Court may also consider materials that are "'necessarily embraced by the pleadings.'" Id. (internal citation omitted).

The settlement agreements were specifically referred to and relied upon by plaintiffs in their complaint. Thus, the Court may rely upon these agreements and still treat defendants' motion as a motion to dismiss rather than a motion for summary judgment.

A motion to dismiss under Rule 12(b)(6) should be granted only if the plaintiff can prove no set of facts entitling him to relief. See Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006). This Court assumes as true all factual allegations of the complaint. Id. However, to avoid dismissal, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim. Id.

6. The Court now turns to the various contentions advanced by defendants in support of their motion:

(a)   Non-Compliance with Rule 10(a) and Standing

Rule 10(a) of the Federal Rules of Civil Procedure requires that the caption of the complaint include the names of the parties. Defendants argue that plaintiffs' complaint should be dismissed

5

because they filed this action using only their initials and they did not seek leave of court to proceed anonymously.  Defendants also argue that K.P.'s parents lack standing to bring this action, as K.P. is the real party in interest; he is legally an adult; and he has the ability to file suit on his own behalf.

After the filing of the motion to dismiss, plaintiffs filed a **Motion to Substitute Party (Doc. 9),** wherein they state that since the filing of this action, K.P. has been declared incompetent by the Washington County Probate Court and that K.P.'s parents, Roger and Marilyn Poerschke, have been appointed to serve as co-guardians over K.P.'s person and estate.  The motion requests that Roger and Marilyn Poerschke, as co-guardians of K.P., be substituted as plaintiffs herein -- in place of R.P., M.P. and K.P.  Defendants filed no response in opposition to plaintiffs' motion.

In light of the provisions of Rule 10(a), the Court agrees with defendants that the Poerschke's have no standing to bring any of the asserted claims individually -- either anonymously or in their own names.  However, the Poerschke's do have standing, as K.P.'s appointed guardians, to bring this action on behalf of K.P.  See Fed. R. Civ. P. 17(a) and 25(b).  Accordingly, defendants' **Motion to Dismiss (Doc. 3)** will be **GRANTED** to the extent that the Poerschke's individual claims will be **DISMISSED**, but plaintiffs' **Motion to Substitute (Doc. 9)** will be **GRANTED** and the Poerschke's will be allowed to proceed with this action on K.P.'s behalf.

The Clerk of the Court is hereby directed to amend the caption of this proceeding to identify the plaintiffs as:

**Roger Poerschke and Marilyn Poerschke,**

**as Next Friends of K.P.**

(b)   <u>IDEA Claims - Exhaustion of Administrative Remedies</u>

Defendants next argue that their motion should be granted as to plaintiffs' alleged IDEA claims because there has been no proper exhaustion of remedies with respect to these claims.

It is useful to first point out that the IDEA:

\*   provides federal money to state and local education agencies in order to assist them in educating handicapped children on the condition that the states and local agencies implement the substantive and procedural requirements of the Act;

\*  assures "that all children with disabilities have available to them a free appropriate education that emphasizes special education and related services designed to meet their unique needs."  §1400(d)(1)(A);

\*   requires a school district to provide an individualized educational program (IEP) for each disabled child.  <u>See</u> § 1414(d)(2)(A).  The IEP is a comprehensive written statement developed jointly by the child's parents and the school district, which outlines the child's special educational needs and the specially designed instruction and services to be provided by the school system to meet those needs.  <u>See</u> 20 U.S.C. § 1414(d);

* provides procedural safeguards intended to allow parents to ensure that states and, more specifically, school districts follow through on the IDEA's mandates. One such safeguard allows parents to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of [a disabled] child, or the provision of a free appropriate public education to such child." § 1415(b)(6). Whenever such a complaint is filed, the state agency must conduct "an impartial due process hearing." § 1415(f)(1);

* permits any party that is dissatisfied with the outcome of the due process hearing to bring suit in state or federal court, 20 U.S.C. § 1415(i)(2), but that right of action is carefully circumscribed. As a condition precedent to its exercise, an aggrieved party must satisfy the IDEA's exhaustion provision, § 1415(l).

Defendants argue that plaintiffs' IDEA claims are subject to dismissal, as plaintiffs failed to exhaust their administrative remedies. The argument has merit.

Plaintiffs initiated the administrative process by filing due process complaints on two occasions with the Department of Education -- but they settled their claims prior to the scheduled hearings. Invoking a due process hearing and then settling the claims prior to the hearing does not "'rise to the level of an exhaustion of administrative remedies.'" S.A.S. v. Hibbing Pub.

Sch., 2005 WL 1593011, *3 (D. Minn. 2005).  The S.A.S. Court reasoned:

> Allowing the settlement ... to constitute exhaustion would permit plaintiffs to proceed with their claims without developing a factual record, allowing the educational system to exercise its expertise in resolving this conflict, or providing the parties a full opportunity to avoid excessive litigation in direct contravention of Congress' intent behind the exhaustion requirement.

(Id.)  Based on this reasoning, the Court concludes that plaintiffs' IDEA claims are subject to dismissal on the grounds that plaintiffs failed to exhaust their administrative remedies.

(c) Claims under the Rehabilitation Act and the ADA

Defendants argue that plaintiffs' claims based on the Rehabilitation Act and ADA are likewise subject to dismissal.

Again, it is useful to note the thrust of these particular Acts as a prelude to the analysis.

The ADA prohibits discrimination against the disabled by public entities.  The Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding.  See Barnes v. Gorman, 536 U.S. 181, 184 (2002).  The enforcement remedies, procedures and rights under the ADA and Rehabilitation Act are the same.  See Hoekstra v. Independent Sch. Dist., No. 283, 103 F.3d 624, 626 (8th Cir. 1996), cert. denied, 520 U.S. 1244 (1997).  To impose liability under either statute, plaintiffs must show that the District acted with "bad faith or gross misjudgment."  Id. at 626-27.

*   **Exhaustion** -- Defendants argue that "because the plaintiffs' ADA and [Rehabilitation Act] claims are repackaged IDEA claims, those claims must be dismissed ... because the plaintiffs have failed to exhaust their administrative remedies." (Doc. 4 at pgs. 25-26.)  In support of this argument, defendants rely on § 1415(l) of the IDEA, which provides that if a plaintiff chooses to bring an IDEA-type claim under another statute -- such as the ADA or the Rehabilitation Act -- he must satisfy the IDEA's exhaustion requirements.  The Court sees no merit to this argument.

In <u>M.P. v. Independent Sch. Dist., No. 721</u>, 439 F.3d 865 (8th Cir. 2006), the parents of a schizophrenic student alleged, inter alia, that the school district acted in bad faith or with gross misjudgment in failing to provide their son with accommodations in the education environment; failing to investigate allegations of disability discrimination, student-against-student harassment, and a hostile education environment; and failed to take appropriate and effective remedial measures once notice of the harassment was provided to school authorities.  The Eighth Circuit concluded that M.P. could pursue a Rehabilitation Act claim independent of his IDEA claims without exhausting his administrative remedies.  The Court reasoned:

> The School District's alleged failure to protect M.P. from unlawful discrimination on the basis of his disability is a claim that is wholly unrelated to the IEP process, which involves individual identification, evaluation, educational placement and free, appropriate education ... decisions. We therefore hold that M.P. has

>a right of action for damages under [the Rehabilitation Act].

Id. at 868.

Plaintiffs' ADA and Rehabilitation Act claims in the present case are similar to those in M.P. Thus, the Court concludes that these claims are unrelated to the IDEA's IEP process and, therefore, they are not subject to dismissal for failure to comply with the IDEA's exhaustion requirements.

\*      **Sufficiency of Allegations of Bad Faith/Gross Misjudgment** -- As stated above, to establish liability under the ADA and the Rehabilitation Act, plaintiffs must show that the District acted with "bad faith or gross misjudgment." Hoekstra, 103 F.3d at 626-27. Defendants argue that plaintiffs "failed to plead any facts" to support such a conclusion. (Doc. 4 at pg. 29.) The Court disagrees.

Plaintiffs allege that they repeatedly discussed with school officials the "bullying, harassment and teasing [of K.P.] by his peers ...[but] Defendants took no steps to address the issues .. and were deliberately indifferent to K.P.'s disabilities and resulting trauma, making statement[s] to other individuals that 'K.P. is crazy, his Mother is crazy and watch out for [K.P.'s] counselor." (Doc. 1 ¶ 20.) The Court believes these allegations, which must be accepted as true for the purposes of ruling on defendants' motion to dismiss, could support an inference that defendants acted with bad faith or gross misjudgment and are

therefore sufficient to state a claim under the ADA and the Rehabilitation Act.[1]

\*      **Liability of School Officials** -- Defendants argue that plaintiffs cannot assert ADA and Rehabilitation Act claims against the school officials in their individual capacities.  The Court agrees based on the following authorities: <u>See</u> <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1011 (8th Cir. 1999), <u>cert. dismissed</u>, 529 U.S. 1001 (2000); <u>Brown v. Dills</u>, 2007 WL 148851, \*4 (W.D. Mo. 2007); <u>Damron v. North Dakota Commr. of Corrections</u>, 299 F. Supp. 2d 970, 979 (D. N.D. 2004), <u>aff'd</u>, 127 Fed. Appx. 909 (8th Cir. 2005).

Moreover, plaintiffs' claims against the school officials in their official capacities are subject to dismissal because they are redundant to their claims against the District.  <u>See</u> <u>Artis v. Francis Howell North Band Booster Ass'n, Inc.</u>, 161 F.3d 1178, 1182 (8th Cir. 1998).

(d)   <u>Claims Under the Equal Education Opportunity Act</u>

In their complaint, plaintiffs refer to the Equal Education Opportunity Act as a basis for jurisdiction.  This Act prohibits the denial of equal education opportunities to an individual on the

---

[1] Defendants assert that they are entitled to qualified immunity on plaintiffs' claims.  However, as discussed below, plaintiffs' claims against the school officials are subject to dismissal and the only claims to survive the motion to dismiss are plaintiffs' ADA and Rehabilitation Act claims against the District.  Qualified immunity is not a defense available to a governmental entity, but only to government employees sued in their individual capacity.  <u>See</u> <u>Davis v. Hall</u>, 375 F.3d 703, 710 (8th Cir. 2004).  Thus, it is unnecessary to address the merits of defendants' qualified-immunity argument.

basis of his race, color, sex or national origin.  See 20 U.S.C. § 1703.  The Act does not apply to claims of disability discrimination as herein alleged and plaintiffs' claims under this Act are, therefore, subject to dismissal.

 (e) <u>Claims Under Section 1983</u>

 Section 1983 provides a federal cause of action for plaintiffs to sue officials acting under color of state law for alleged deprivations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  See 42 U.S.C. § 1983. It is well recognized that a plaintiff may use section 1983 to enforce not only rights contained in the Constitution, but also rights that are defined by federal statutes.  See <u>Alsbrook</u>, 184 F.3d 999, 1010-11.

 (1)  As discussed above, plaintiffs' claims under the IDEA and the Equal Education Opportunity Act are subject to dismissal. Accordingly, plaintiffs cannot sustain a § 1983 cause of action based upon any alleged violation of these federal statutes.  See <u>Bradley v. Arkansas Dep't of Ed.</u>, 301 F.3d 952, 957 (8th Cir. 2002).

 (2)  While plaintiffs do have viable claims against the District under the ADA and the Rehabilitation Act, violations of these statutes is not cognizable under § 1983.  See <u>Alsbrook</u>, 184 F.3d at 1010-11.

(3) Plaintiffs also attempt to premise § 1983 liability on rights secured by the Constitution, alleging that defendants denied K.P. due process and equal protection under the law.

With regard to plaintiffs' due process claim, defendants argue that this claim fails because plaintiffs have failed to allege facts giving rise to a constitutional duty on the part of the defendants to have protected K.P. from the actions of his peers. The Court agrees and, therefore, concludes that plaintiffs' § 1983 due process claim is subject to dismissal. See Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732-34 (8th Cir. 1993) (school officials did not have a constitutional duty to protect a mentally retarded student from violent acts of another student); see also Lee v. Pine Bluff Sch. Dist., 472 F.3d 1026, 1030-32 (8th Cir. 2007).

With regard to plaintiffs' equal-protection claim, as pointed out by defendants, plaintiffs do not allege that K.P. was treated differently than similarly situated students. Absent such an allegation, plaintiffs have failed to state a § 1983 equal-protection claim. See Killion v. Burl, 860 F.2d 306, 306-07 (8th Cir. 1988) (per curiam).

Based on the foregoing analysis, the Court concludes that plaintiffs have failed to allege any basis for § 1983 liability, and these claims are, therefore, subject to dismissal.

(f) <u>State-Law Claims</u>

Defendants also urge the dismissal of state law claims asserted by plaintiffs and such will be discussed in turn.

\* **Outrage** -- Defendants argue that plaintiffs failed to state sufficient facts to support a claim for tortious outrage. Plaintiffs do not address this argument.

To establish an outrage claim under Arkansas law, a plaintiff must show: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "'extreme and outrageous,'" was "beyond all possible bounds of decency,'" and was "'utterly intolerable in a civilized community'"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable man could be expected to endure it. <u>See</u> <u>Shepherd v. Washington County</u>, 331 Ark. 480, 507-08 (1998) (internal citation omitted). The tort of outrage is not favored and clear-cut proof is required to establish the elements of an outrage claim. <u>See</u> <u>id.</u> at 508.

The Court agrees with defendants (and plaintiffs have not argued otherwise) that the facts alleged by plaintiffs do not rise to the level of extreme and outrageous conduct sufficient to support a claim of outrage. <u>Cf.</u> <u>id.</u> at 507-08 (surviving spouse of victim, killed by inmate who escaped from custody while being

15

treated at a private clinic, failed to state claim for tortious outrage against county and sheriff for their conduct in sending inexperienced and under-equipped deputy with violent, psychotic inmate to clinic when other patients would be present). Plaintiffs' outrage claim is, therefore, subject to dismissal.

   \*   **Negligence** -- Plaintiffs' negligence claim is likewise subject to dismissal. Defendants argue -- and plaintiffs offer no argument in opposition -- that they are immune from liability on plaintiffs' negligence claim. The Court agrees. See Ark. Code Ann. § 21-9-301; Davis v. Fulton County, Ark. 90 F.3d 1346, 1353 (8th Cir. 1996).

   \*   **Breach of Contract** -- Plaintiffs allege that defendants breached the first settlement agreement entered into by the parties. Defendants argue that this claim is subject to dismissal. Plaintiffs, again, do not address this argument.

   As defendants point out, the alleged breach of the first settlement agreement was the basis for the second Due-Process complaint plaintiffs filed with the Department of Education. The parties settled the second complaint -- thus, in effect, settling plaintiffs' claim for the alleged breach of the first agreement. In fact, the second settlement agreement specifically stated: "This Agreement supercedes the parties' earlier Agreement ... [and] [a]ny portion of the earlier Agreement not specially referenced or modified herein is null and void and no[] longer in effect." (Doc.

3 Ex. B ¶ 15.) Accordingly, plaintiffs do not have a viable breach-of-contract claim.

   (g) <u>Punitive Damages</u>

   Based on the above analysis, the only claims not subject to dismissal are plaintiffs' claims against the District under the ADA and the Rehabilitation Act. Defendants correctly point out that plaintiffs cannot recover punitive damages under either Act. <u>See</u> <u>Barnes</u>, 536 U.S. at 191. Plaintiffs' claim or request for punitive damages is therefore subject to dismissal.

   7. <u>Conclusion</u>

   Based on the foregoing the Court concludes:

   \*   that plaintiffs' **Motion to Substitute Party (Doc. 9)** should be, and hereby is, **GRANTED** and the Clerk of the Court is hereby directed to amend the caption of this proceeding to identify the plaintiffs as:

   **Roger Poerschke and Marilyn Poerschke, as Next Friends of K.P.**

   \*   that defendants' **Motion to Dismiss (Doc. 3)** should be, and hereby is, **GRANTED IN PART**, as follows:

      -   the claims of R.P. and M.P., individually, are hereby **DISMISSED**;

      -   the claims against the named school officials, in both their individual and official capacities, are **DISMISSED** and these individuals are **DISMISSED AS DEFENDANTS** to this action;

17

- plaintiffs' federal claims under the Individuals with Disabilities Education Act; the Equal Education Opportunity Act; and § 1983 are **DISMISSED**;

- plaintiffs' state-law claims of outrage, negligence, and breach of contract are **DISMISSED**; and

- plaintiffs' claim for punitive damages is **DISMISSED**.

\*   that defendants' **Motion to Dismiss (Doc. 3)** should be, and hereby is, **DENIED** with respect to K.P.'s claims against the Springdale School District (the only remaining defendant) under the Americans with Disabilities Act and the Rehabilitation Act.  **The school district shall have twenty days from the date of this order to file an answer to the complaint.  A scheduling order will then issue.**

**IT IS SO ORDERED.**

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE